**Catherine A. GRIFFIN and Glenn Griffin, Plaintiffs,**

v.

**DANA POINT CONDOMINIUM ASSOCIATION, Defendant.**

No. 91 C 2731.

United States District Court,
N.D. Illinois, E.D.

May 31, 1991.

Gary Rolfes, Mayer, Mayer, Lonergan & Rolfes, Clinton, Iowa, for plaintiffs.

Gregory Bolduc, Hinshaw & Culbertson, Chicago, Illinois, for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This diversity-of-citizenship personal injury action has recently been transferred to this District Court from the United States District Court for the Southern District of Iowa. Defendant Dana Point Condominium Association ("Association") has filed its Answer and Affirmative Defenses to the Complaint brought by plaintiffs Catherine ("Catherine") and Glenn ("Glenn") Griffin (collectively "Griffins"), and this sua sponte opinion is occasioned by matters disclosed by each side's pleadings that require current attention.

As for Griffins' Complaint, it poses an obvious potential jurisdictional concern.[1] Catherine's claim stems from a slip and fall (Complaint ¶ 6) on the stairway in the condominium building over which Association assertedly maintained control and had sole responsibility for care and maintenance (Complaint ¶¶ 5, 7). Whenever the potential recovery in an action is not susceptible to precise measurement (and a personal injury action is of course a paradigmatic example of that), both the litigants and the court must be keenly aware of the need to establish at least a colorable basis for plaintiff's meeting the more-than-$50,000 jurisdictional floor in diversity cases (see 28 U.S.C. § 1332(a)[2]). Any failure to be attentive to that consideration can lead to a result in which the losing party—whichever side that might be—can attack the ultimate outcome even post-judgment. For a graphic example of that possibility, see *Ross v. Inter-Ocean Insurance Co.*, 693 F.2d 659 (7th Cir.1982), in which—upon plaintiff's appeal from a summary judgment in defendant's favor—the parties were sent back to square one to start the case all over again in the state court because the minimum jurisdictional amount could not arguably have been in controversy.

For that reason this Court uniformly requires the parties, in any action where even a potential problem appears to exist as to the jurisdictional amount, to treat with that subject by demonstrating that the case is such that the plaintiff has a rational predicate for an over-$50,000 ad damnum. In that respect see the seminal case in this area, *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938), which requires that "the claim is apparently made in good faith"—an objective test requiring at least a colorable assertion.

Accordingly counsel for the parties will be expected to address not only the question of this action's survivorship in any event—a subject dealt with later in this opinion—but also the question of jurisdictional amount as to Catherine's claim at the next status hearing, which has been set to be held at 9 a.m. June 7, 1991. As for Glenn's loss-of-consortium claim asserted in Complaint Count II, it cannot of course be aggregated with Catherine's claim to satisfy the jurisdictional amount, but must be considered on its own (*Zahn v. International Paper Co.*, 414 U.S. 291, 294-95, 94 S.Ct. 505, 508-09, 38 L.Ed.2d 511 (1973)).

---

1. This Court always undertakes an immediate review of newly-filed complaints; see *Wisconsin Knife Works v. National Metal Crafters,* 781 F.2d 1280, 1282 (7th Cir.1986):

> The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged.

2. All further references to Title 28's provisions will simply take the form "Section—."

Nonetheless, if Catherine's claim is properly here, the recently-enacted Section 1367 provision for supplemental jurisdiction (which took effect December 1, 1990) may save Glenn's claim as well.

That suffices to cover the subject matter jurisdictional issues that appear on the face of the Complaint, though it does not touch on the potentially fatal defect that also lurks in Griffins' claims as they have been advanced. But before that critical issue is looked at, a brief mention of a defect in Association's pleadings bears mention.

■ Fed.R.Civ.P. ("Rule") 8(b) is quite specific in defining the only circumstances under which a pleader can do something other than either admit or deny an allegation:

> If a party is without knowledge or information sufficient to form a belief as to the truth of an averment, the party shall so state and this has the effect of a denial.

Despite that unambiguous language, Association's Answer frequently (see Count I ¶¶ 1.a, 2, 5 (a variation) and 6, and Count II ¶ 2) resorts to an impermissible form of pleading essentially along the following lines:

> Insufficient knowledge upon which to base a belief as to the truth or falsity of the allegations contained in paragraph— of Count—of the plaintiffs' complaint at law is stated by this defendant, and therefore the said allegations are denied and strict proof thereof is demanded by this defendant.

This Court, despairing of the need for its own repetitive writing of opinions decrying the misreading (or nonreading) of Rule 8(b) that has spawned such incorrect pleading, has caused one of its opinions in this area to be published. Association's counsel are directed to *Gilbert v. Johnston*, 127 F.R.D. 145, 146 (N.D.Ill.1989).

If it turns out that Association must go back to the drawing board to correct those aspects of its Answer, its attention is also called to Answer ¶ 1.b. It is of course a contradiction in terms for Association to "den[y] that it is a corporation" and immediately thereafter to assert that it "is an Illinois not-for-profit corporation." Gertrude Stein ("Rose is a rose is a rose") would do better than that.

But Association may be spared the need to consider the beams in its own eye, given the mote that is clearly present in Griffins' (Matthew 7:3). This Court is also constrained to address Association's First Affirmative Defense, in which it asserts that "plaintiffs' complaint is barred by the applicable two year statute of limitations for personal injury actions." When Association was before the Iowa District Court, it urged a dismissal rather than a Section 1404(a) transfer because there had been no reasonable predicate for Griffins' asserting that Association was subject to personal jurisdiction there. Indeed, had the filing situation been reversed so that Seventh Circuit rather than Eighth Circuit law controlled, there was powerful precedent supporting that position, even though dismissal of the action would have barred a refiling because the statute of limitations had run in the meantime (see such cases as *Cote v. Wadel*, 796 F.2d 981, 984–85 (7th Cir.1986) dealing with a Section 1404(a) motion, and in the related context of Section 1406(a) see such cases as *Saylor v. Dyniewski*, 836 F.2d 341, 345 (7th Cir.1988) and *Hapaniewski v. City of Chicago Heights*, 883 F.2d 576, 579–80 (7th Cir.1989)).

■ That argument was rejected by Honorable Charles Wolle of the Iowa District Court in a brief March 28, 1991 order precisely because of his concern that the claim should not be lost on limitations grounds,[3] even though Judge Wolle found "that the exercise of personal jurisdiction over the defendant is not in accord with due process." Orders either granting or denying Section 1404(a) transfers are non-appealable because they are interlocutory, although there is precedent for bringing mandamus actions to review such orders

---

**3.** Judge Wolle reached his conclusion despite the decision by his Court of Appeals in *Biby v. Kansas City Life Insurance Co.*, 629 F.2d 1289, 1294 (8th Cir.1980), affirming a dismissal under parallel circumstances. More about *Biby* a bit later.

under special and limited circumstances (see 15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3855 (2d ed. 1986) and cases cited there and in the 1991 pocket part). Association chose not to take that risky course of pursuing a questionable mandamus remedy, instead opting to permit the transfer and to raise the issue again here.

▇ Judge Wolle's ruling is not of course binding in issue-preclusion terms, because its lack of finality leaves the matter open for further consideration. Nor does that ruling have the force attached to appellate court decisions when a case returns to the trial court after appeal—usually spoken of in "law of the case" terms.[4] This Court does not find that the issue is beyond its ken here, particularly if it finds that clear error was involved.

▇ Here the accident, though to be sure it injured an Iowa citizen,[5] occurred in Illinois. As a condominium association, Association is an organization that by definition is involved only in local activities here—there is no whisper of a suggestion that it had even the slightest contact with the State of Iowa, and Griffins' counsel had to know that. Indeed, Complaint ¶ 1(b) not only identified Association's Illinois incorporation and its principal place of business as situated in this state, but went on to direct that service of process be made on its designated agent in Illinois. Then Complaint ¶ 2 spoke in these astonishing terms (emphasis added):

Venue is proper in the United States District Court for the Southern District of Iowa, Davenport Division, under Title 28 U.S.C. § 1391(a), in that the Defendant corporation is presently and was at the time of the incident made the basis of this lawsuit incorporated and doing business in the *State of Illinois*.

*Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466, 82 S.Ct. 913, 915–16, 8 L.Ed.2d 39 (1962) teaches that a plaintiff should be spared the "injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn." But the uniform case law in this Circuit (such decisions as *Cote, Saylor* and *Hapaniewski*) as well as *Biby* in the Eighth Circuit instructs us that *Goldlawr* was not intended to salvage a palpably untenable filing where no such "elusive facts" are even arguably involved.

*Biby,* 629 F.2d at 1294 says that "[s]ome measure of good faith expectation of proceeding in the court in which the complaint is filed is essential to tolling the statutes of limitations." One branch of Judge Wolle's ruling (that dealing with due process) suggests that no such good faith expectation of proceeding in Iowa existed—and that was unquestionably right. *Cote,* 796 F.2d at 985 "remind[s] plaintiffs and their counsel that they must determine where the plaintiff can get personal jurisdiction over the defendant before, not after, the statute of limitations runs; otherwise they court disaster." That is not only uncontrovertible, but it might well have been written for

---

**4.** What *Biby* affirmed was the dismissal by a Section 1404(a) transferee court of an action originally brought, like this one, in a jurisdiction where there was no colorable basis for obtaining personal jurisdiction over the defendant—"a selection devoid of a good faith expectation of proceeding in the forum" (629 F.2d at 1294). And the Eighth Circuit also rejected the argument that review of the transfer order was unavailable because "a transferee court cannot directly review another court's order of transfer" (*id.*). Although the point made in *Biby* that defendant had not been able to raise the issue of limitations in the transferor court does not apply here, this Court does not view that as dispositive.

**5.** Even here Griffins' Complaint was defective, speaking of their Iowa *residence* rather than their *citizenship,* which is of course the relevant fact for diversity purposes. That is itself a jurisdictional flaw that would support dismissal (see 5 Wright & Miller, *Federal Practice and Procedure: Civil* § 1208, at 101 & n. 9, and cases there cited (1990 ed.); 13 B *id.* § 3611, at 516–18 & nn. 27–29, and cases there cited (1984 ed. and 1990 pocket part)), but this Court's regular practice in such situations is to dismiss only a complaint rather than the action itself because of the ease of curing the defect (as Section 1653 permits). Any complaint-only dismissal would not be a final order such as to cause the filing of a new complaint to be barred by limitations.

this case.[6] If those and the other cases cited in this opinion are to be heeded, no legal effect should be given to the filing of the Complaint in a jurisdiction where it was doomed to fail because Association unquestionably could not be haled into court there—and it is clear that no *later* filing was made before the limitations clock ran out.

As already stated, this action has already been set for a status hearing at 9 a.m. June 7, 1991. At that time counsel for Griffins should come prepared to explain how and why this action can and should survive dismissal under Association's First Affirmative Defense and the analysis set out in this opinion.

---

**6.** Griffins' counsel were not confronted with the need to make a split-second decision about where to sue (although even a split second should have been enough for them to decide on an Illinois rather than Iowa filing). They filed the Complaint in Davenport, Iowa on January 16, 1991, over three weeks before the two year statute of limitations would run out (the accident happened on February 8, 1989; Complaint ¶ 6).