Catherine A. GRIFFIN and Glenn Griffin, Plaintiffs,

v.

DANA POINT CONDOMINIUM ASSOCIATION, Defendant.

No. 91 C 2731.

United States District Court, N.D. Illinois, E.D.

June 14, 1991.

---

Gary J. Rolfes, Clinton, Iowa, for plaintiffs.

Gary B. Bolduc, Hinshaw & Culbertson, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This Court's May 31, 1991 memorandum opinion and order (the "Opinion") 765 F.Supp. 498, issued sua sponte promptly after this action had been transferred to this District Court from the United States District Court for the Southern District of Iowa, addressed not only a potential subject matter jurisdictional problem—a question as to the sufficiency of the amount in controversy—but also a problem of personal jurisdiction that had been raised by the First Affirmative Defense asserted by defendant Dana Point Condominium Association ("Association").[1] This Court concluded the Opinion by directing counsel for plaintiffs Catherine ("Catherine") and

Glenn ("Glenn") Griffin (collectively "Griffins") to attend the previously-set June 7 status hearing and to be "prepared to explain how and why this action can and should survive dismissal under Association's First Affirmative Defense and the analysis set out in this opinion."

At the status hearing Griffins' counsel submitted two documents:

    1. Griffins' "Statement of Material Facts" and

    2. their "Memorandum Supporting Resistance to Defendant's First Affirmative Defense."

This Court has considered both those submissions, finds them unpersuasive in terms of the hurdles identified in the Opinion, and dismisses both facets of this action—but for different reasons.

### Subject Matter Jurisdiction

At the outset the Opinion expressed concern about the existence of subject matter jurisdiction in diversity terms—not because the parties lacked the necessary difference in citizenship, which was established by the uncontroverted allegations in Griffins' Complaint, but rather in terms of the more–than–$50,000 jurisdictional floor in such cases (see 28 U.S.C. § 1332(a)[2]). 765 F.Supp. at 499–500 described the gravamen of Griffins' claims and the need to address the potential problem of the requisite jurisdictional amount in controversy. So that this opinion may be wholly self-contained, it will repeat the relevant parts of that description.

Catherine's claim stems from a slip and fall (Complaint ¶ 6) that she suffered on the stairway in the condominium building over which Association assertedly maintained control and had sole responsibility for care and maintenance (Complaint ¶¶ 5, 7). Whenever the potential recovery in an action is not susceptible to precise measurement (and a personal injury action is of course a paradigmatic example of that),

---

**1.** As explained later, Association has framed its defense in statute-of-limitations terms, but on analysis it is plain that Association could raise that limitations argument only as to a *future* lawsuit that would have to be filed if Associa-

tion's contention as to lack of personal jurisdiction were upheld.

**2.** All further references to Title 28's provisions will simply take the form "Section—."

both the litigants and the court must be keenly aware of the need to establish at least a colorable basis for plaintiff's meeting the more–than–$50,000 jurisdictional prerequisite for federal diversity-of-citizenship cases. Any failure to be attentive to that consideration can lead to a result in which the losing party—whichever side that might be—can attack the ultimate outcome even post-judgment. For a graphic example of that possibility, see *Ross v. Inter–Ocean Insurance Co.*, 693 F.2d 659 (7th Cir.1982), in which—upon plaintiff's appeal from a summary judgment in defendant's favor—the parties were sent back to square one to start the case all over again in the state court because the minimum jurisdictional amount could not arguably have been in controversy.

■ For that reason this Court uniformly requires the parties, in any action where even a potential problem appears to exist as to the jurisdictional amount, to treat with that subject by demonstrating that the case is such that the plaintiff has a rational predicate for an over–$50,000 ad damnum. In that respect see the seminal case in this area, *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938), which requires that "the claim is apparently made in good faith"—an objective test requiring at least a colorable assertion.

■ As part of Griffins' responsive submission, their counsel has provided information as to Catherine's past and estimated future medical expenses, as well as her related claims of (1) past and future pain and suffering, (2) permanent disability and (3) loss of the quality of her life and mental anguish. Those things combined certainly establish the bona fides of the over–$50,000 ad damnum asserted for Catherine's claim.

■ Glenn's loss of consortium claim stands in a different posture. Count II ¶ 3 alleges:

3. The accident and injuries caused by the negligence of Defendant have disabled the Plaintiff, Catherine A. Griffin, so that the Plaintiff, Glenn A. Griffin, has been deprived of her aid, services, support, affection, society, and companionship, all to his damage.

And the relief prayed for in Count II is simply "Judgment against the Defendant, The Dana Point Condominium Association, in a fair and reasonable amount. . . ."

No responsive information has been tendered by Griffins to support the notion that more than $50,000 is even arguably in controversy in that respect so as to meet the standard set by Section 1332(a).[3] Instead Glenn's counsel looks to stay in federal court under the new supplemental jurisdiction provisions of Section 1367 "since he is not joined under Rule 19 or Rule 24 of the Federal Rules of Civil Procedure" (Griffins Mem. 5).

But that is a mistaken view of the December 1, 1990 supplemental jurisdiction enactment embodied in Section 1367. Though in initially posing the issues this Court had suggested the possibility that the new legislation "may save Glenn's claim as well" (765 F.Supp. at 500), a close look at both the language of the statute and its legislative history teaches that the new provision does not change the old law in this area at all.

As Opinion at 3 said, *Zahn v. International Paper Co.*, 414 U.S. 291, 292–95, 94 S.Ct. 505, 507–09, 38 L.Ed.2d 511 (1973) definitively establishes that the claims of *different* plaintiffs asserting their individualized claims cannot be aggregated to satisfy the jurisdictional amount—each plaintiff's claim must be considered on its own as though it were a separate lawsuit. Nor did *Zahn* write on a clean slate by any

---

3. If the physically injured Catherine—with well over $20,000 in past and future medical expense, past and future pain and suffering that she values at $40,000, plus permanent disability alleged to be $22,411—attaches a price tag of $22,411 to the "loss of the quality of her life and mental anguish," there appears to be no predi-

cate for assigning a much larger price tag (over $50,000) to the intangible loss claimed by Glenn. But in any event this Court is not called upon to speculate on that score, because the burden of establishing the jurisdictional amount is always on the *plaintiff*, and that burden is plainly not met here.

means—here is what it said (*id.*) (footnotes and their citations omitted):

> From the outset, Congress has provided that suits between citizens of different States are maintainable in the district courts only if the "matter in controversy" exceeds the statutory minimum, now set at $10,000. The same jurisdictional-amount requirement has applied when the general federal-question jurisdiction of the district courts is sought to be invoked. A classic statement of the dichotomy that developed in construing and applying these sections is found in *Troy Bank v. G.A. Whitehead & Co.*, 222 U.S. 39, 40–41 [32 S.Ct. 9, 9, 56 L.Ed. 81] (1911):
>
>> When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount.
>
> This distinction and rule that multiple plaintiffs with separate and distinct claims must each satisfy the jurisdictional-amount requirement for suit in the federal courts were firmly rooted in prior cases dating from 1832, and have continued to be the accepted construction of the controlling statutes, now §§ 1331 and 1332. The rule has been applied to forbid aggregation of claims where none of the claimants satisfies the jurisdictional amount, as was the case in *Scott v. Frazier*, 253 U.S. 243, 244 [40 S.Ct. 503, 503, 64 L.Ed. 883] (1920), for example, where the Court stated the rule to be that "the amount in controversy must equal the jurisdictional sum as to each complainant." It also requires dismissal of those litigants whose claims do not satisfy the jurisdictional amount, even though other litigants assert claims sufficient to invoke the jurisdiction of the federal court.

Section 1367(b), although it speaks only in terms of "claims by persons proposed to be joined as plaintiffs under Rule 19," does not alter that proposition at all—after all, because Glenn does not have an independent ticket of entry to the federal court on his own, the only way that he can do so is by trying to piggyback onto Catherine's presence here. *Zahn* and its long line of predecessors forbid that, and such a dramatic change in established law is not within the purview of the new statute.[4]

Accordingly this Court is compelled to and does dismiss Glenn as a party plaintiff for lack of subject matter jurisdiction. Though Catherine's claim survives on that score, it poses a quite different issue to which this opinion now turns.

### Personal Jurisdiction

■ As 765 F.Supp. at 500 reflects, Association's Affirmative Defenses include this contention under the rubric "Statute of Limitations":

> The plaintiffs' complaint is barred by the applicable two year statute of limitations for personal injury actions. The plaintiffs' original complaint should have been dismissed because there was no basis for jurisdiction over this defendant in Iowa. Therefore, any subsequent filing in this jurisdiction necessitated by the dismissal would have been after the expiration of the two-year statute of limitations.

But as the very framing of that Affirmative Defense states, what Association is really urging is that Judge Charles Wolle of the District Court in Iowa was wrong in having failed to dismiss the action for lack of personal jurisdiction over Association in that state. After all, *this* lawsuit was timely filed—it is only if this suit is dis-

---

**4.** See H.R.Rep. No. 734, 101st Cong., 2d Sess. 76–77 (1990), U.S.Code Cong. & Admin.News 1990, p. 6802, which specifically cites *Zahn* as establishing jurisdictional requirements that the section "is not intended to affect." To be sure, the brief comment in the report speaks of the joinder of class action plaintiffs (that had been the situation in *Zahn*, which rejected the proposition that less-than-jurisdictional-amount claims could be aggregated to satisfy the jurisdictional floor). But the basis for that ruling was the one stated in the *Zahn*, language quoted at length here, and that underpinning is also left unimpaired by Section 1367.

patched that a *new* lawsuit, which perforce would be brought more than two years after the incident on which Griffins sue, might run afoul of the limitations bar.

Neither the always-present respect for a fellow federal judge nor the doctrine of "law of the case" commands this Court to adhere to Judge Wolle's treatment of the case.[5] In the context of reviewing one District Judge's holding that came to a result opposite from an earlier decision by another District Judge in the same case, *Champaign–Urbana News Agency, Inc. v. J.L. Cummins News Co.*, 632 F.2d 680, 683 (7th Cir.1980) (citations omitted) has said this:

> The law of the case is not entitled to the same respect as the doctrine of stare decisis. The law of the case does not demand obsequiousness right or wrong. Mr. Justice Holmes said that the phrase "law of the case" merely expressed the practice of courts generally to refuse to reopen what had been decided but was not a limit on their power. The only sensible thing for a trial court to do is to set itself right as soon as possible when convinced that the law of the case is erroneous. There is no need to await reversal. To modify the law of the case is primarily a matter of "good sense."
>
> \*    \*    \*    \*    \*    \*
>
> There is no need for rigid adherence to the earlier law of the case.... As this court said in *Parmelee Transportation Co. v. Keeshin*, 292 F.2d 794, 797 (7th Cir.1961), "[o]bviously we cannot be expected to reverse a correct decision by one district judge simply because we find it is contrary to a prior ruling by another

district judge in the same case, i.e. contrary to the 'law of the case.'"

And coming even closer to home, here is what our Court of Appeals has said about the responsibility of the second District Judge in circumstances comparable to those here (*Diaz v. Indian Head, Inc.*, 686 F.2d 558, 562–63 (7th Cir.1982)):

> As Professor Moore has observed:
>
> > Since a lower court cannot by its law of the case bind a higher court having appellate jurisdiction over it, the only sensible thing for a lower federal court ... to do is to set itself right instead of inviting reversal above, when convinced that its law of the case is substantially erroneous.
>
> 1B *Moore's Federal Practice* ¶ 0.404[1], at 407 (1982) (footnotes omitted). We think Professor Moore's analysis is applicable to the situation in which one federal district judge believes the ruling of another district judge to be erroneous, as Judge Perry did in this case.

This Court is in full accord with Judge Wolle in determining that Association was not subject to personal jurisdiction in Iowa—in fact, *both* sides of this litigation agree with that proposition, though Griffins' counsel makes a half-hearted suggestion that there was an arguable basis for his having originally thought that personal jurisdiction *might* be assertable.[6] That argument is no better than makeweight (if indeed that), and it simply cannot justify the case having been brought against Association in Iowa in the first instance.

---

**5.** Indeed, the substantive ruling that this Court is about to reach as to the lack of personal jurisdiction over Association in Iowa is really in full accord with Judge Wolle's own determination on that score, for in the course of his transfer order he himself found "that the exercise of personal jurisdiction over the defendant is not in accord with due process."

**6.** Association is a condominium association that owns, controls and has responsibility for maintaining the common areas in an apartment building in Arlington Heights, Illinois (where Iowa resident Catherine was visiting when she slipped and fell). It would be difficult to posit a more localized activity—one in which the con-

dominium association has not the slightest connection with another state such as Iowa. What Griffins' counsel now suggests is that Association's liability insurer (not Association itself) is part of an insurance group of companies licensed to do business in Iowa, so that he thought "there might be sufficient contact with the State of Iowa through this agency to invoke jurisdiction" (Griffins Statement of Material Facts 2). Even that extraordinary notion of personal jurisdiction was dispelled for Griffins' counsel when Association filed its motion to dismiss together with an affidavit of one of its officers (*id.*).

That being so, this Court is firmly convinced that Judge Wolle was dead right as to the clear lack of due process involved in subjecting Association to suit in Iowa—and that Judge Wolle's ruling was erroneous in its not having granted the dismissal of Association for the clear lack of personal jurisdiction. That is the uniform teaching of such Seventh Circuit cases as *Cote v. Wadel*, 796 F.2d 981, 984–85 (7th Cir.1986), *Saylor v. Dyniewski*, 836 F.2d 341, 345 (7th Cir.1988) and *Hapaniewski v. City of Chicago Heights*, 883 F.2d 576, 579–80 (7th Cir.1989)—even where the price paid for dismissal is a death knell for the plaintiff's claim because the limitations clock has run out. If anything this case presents an a fortiori situation in comparison with the opinion in *Cote*, which after distinguishing the situation of an accidental misfiling dealt with in *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467, 82 S.Ct. 913, 916, 8 L.Ed.2d 39 (1962), said this (796 F.2d at 985):

> In effect the district court penalized [plaintiff] heavily for filing her suit in the wrong district: she is forever barred from bringing a suit that for all we know has great merit. If her mistake were one easy to commit, the penalty might be so disproportionate to the wrong that it would have to be reversed, as a clear abuse of discretion. But the mistake was elementary. Elementary prudence would have indicated to her lawyer that he must file a protective suit in Michigan because there was only a slight probability of obtaining personal jurisdiction in Wisconsin over the defendants. Compare *Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909, 911, 914 (7th Cir.1985). The proper penalty for obvious mistakes that impose costs on opposing parties and on the judicial system is a heavy one. *Brown v. Grimm*, 624 F.2d 58, 59 (7th Cir.1980) (per curiam), upheld a refusal to transfer a case in circumstances like those of the present case. We adhere to *Brown* and remind plaintiffs and their counsel that they must determine where the plaintiff can get personal jurisdiction over the defendant before, not after, the statute of limitations runs; otherwise they court disaster. If the result in the present case seems harsh, that is because the costs to [plaintiff] are palpable while the benefits are largely invisible. But the benefits are not trivial; litigants and the public will benefit substantially in the long run from better compliance with the rules limiting personal jurisdiction.

And in terms of what was before Judge Wolle, dismissal is also the teaching of his own Court of Appeals—the Eighth Circuit—in *Biby v. Kansas City Life Insurance Co.*, 629 F.2d 1289, 1294 (8th Cir. 1980). Although *Biby* spoke in a different context—one in which the litigant had engaged in game-playing and an abuse of the judicial process to escape a statute-of-limitations bar [7]—it too distinguished *Goldlawr* as applicable only to a situation in which a plaintiff's lawyer "had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn" (*Goldlawr*, 369 U.S. at 466, 82 S.Ct. at 915).

Accordingly this Court dismisses Association from this action, as it should have been in the first instance, for lack of personal jurisdiction.[8] Thus both branches of this action have been disposed of.

---

**7.** *Biby, id.* spoke of the convoluted efforts of plaintiffs' counsel there as "merely a procedural ploy to try to toll the statutes of limitations." Even though Griffins' counsel was unquestionably wrong in having filed suit in Iowa rather than here (an error that blocks Griffins from invoking the equitable relief exemplified by *Goldlawr*), counsel cannot be charged with the kind of deliberate tactics that were involved in *Biby* and that led the court there to ignore the lawsuit's filing entirely for limitations-tolling purposes.

**8.** As stated earlier in the text, that is necessarily the only relief to which Association may lay claim in this lawsuit. This lawsuit was unquestionably filed before the statute of limitations ran out. Limitations becomes a problem only if the existence of this lawsuit is ignored (as though it had never been filed)—something suggested as a possibility by *Biby*, but of doubtful conceptual validity. As for *this* action, the appropriate ruling is to dismiss it so that any new lawsuit may be viewed through the lens of the statute of limitations.

### Conclusion

This action is dismissed as to Glenn Griffin for lack of federal subject matter jurisdiction—his failure to establish the minimum jurisdictional amount for a diversity action. As to the remaining claim by Catherine Griffin, the Complaint and this action are dismissed for lack of personal jurisdiction over Dana Point Condominium Association—an issue that was raised where the action was first brought in the Iowa District Court and that has been preserved by Association in its affirmative defenses here. Accordingly this action is dismissed in its entirety for lack of jurisdiction.[9]

---

9. This Court of course need not deal with the potential applicability of Ill.Rev.Stat. ch. 110, ¶ 13–217 to any new action that Griffins might bring in an Illinois state court (which, as a court of general jurisdiction without any floor for the required ad damnum, could entertain both Catherine's and Glenn's claims). That statute grants additional time beyond the otherwise applicable state of limitations to any plaintiff whose action has been dismissed by a federal district court for lack of jurisdiction, and at least one Illinois Appellate Court opinion has held that a dismissal for lack of *any* type of jurisdiction (not just subject matter jurisdiction) is within the statutory provision (*Raper v. St. Mary's Hospital,* 181 Ill.App.3d 379, 130 Ill.Dec. 131, 536 N.E.2d 1342 (3d Dist.1989)). That however would be for an Illinois state court to decide if Griffins attempted a new filing there. Incidentally, it is interesting to note that the statute does not speak only of a United States District Court sited in Illinois, so that it might well have been called into play if Judge Wolle had granted dismissal for lack of personal jurisdiction in the first instance rather than having transferred the case (an action that, from the look of things, seems to have been responsive to Judge Wolle's concern that the claim might have been extinguished entirely because of the poor judgment of Griffins' counsel in having sued Association in Iowa in the first place).