**Ceres HENKEL and Reiter Land Company, Plaintiffs,**

v.

**ITT BOWEST CORPORATION, a financial services company, ITT Residential Capital Servicing Corporation, Defendants.**

**No. 94–4116–SAC.**

United States District Court, D. Kansas.

Dec. 19, 1994.

Kevin L. Phillips, Weltmer Law Office, Mankato, KS, Edward J. Nazar, Redmond, Redmond & Nazar, Wichita, KS, for plaintiffs Ceres Henkel, Reiter Land Co.

Philip L. Bowman, Adams, Jones, Robinson & Malone, Wichita, KS, for defendants ITT Bowest Corp., a financial services company, ITT Residential Capital Servicing Corp.

## MEMORANDUM AND ORDER

CROW, District Judge.

On May 25, 1994, the plaintiffs filed a petition in the District Court of Jewel County, Kansas. Briefly summarized, the petition alleges that Ceres Henkel, tendered to ITT Bowest Corporation, a financial services corporation, a check in full payment of her mortgage loan.[1] ITT is a mortgage servicer; the holder of the mortgage is the F.D.I.C. Henkel then sold part of the property, which had been mortgaged to the F.D.I.C., for $28,000, receiving an earnest money check in the amount of $2,000. Reiter Land Company, as real estate agent for Henkel, held the $2,000 earnest money. At the time of closing, Reiter Land Company, apparently believing the first mortgage had been released, disbursed $26,000 to Henkel in expectation of receiving that amount from the buyer's lender. However, the buyer's lender would not close when it discovered that the release of the first mortgage had not been recorded. Reiter Land Company borrowed $26,000 to cover its disbursement to Henkel.

Henkel and Reiter Land Company brought this suit jointly, asserting separate claims against ITT in four counts:

Count I: Henkel claims damages based upon ITT's failure to release the mortgage. Henkel seeks damages for interest, actual damages, and statutory damages in the amount of $500 plus attorney's fees.

Count II: Reiter Land Company claims damages based upon ITT's failure to release the mortgage. Reiter prays for judgment in the amount of $1,0001.11 with interest, plus statutory damages in the

---

1. A letter dated February 2, 1993, indicates that the "loan has been paid in full."

amount of $500 as well as reasonable attorney's fees.

Count III: Henkel claims damages in excess of $50,000 based upon "false or untrue" representations of the defendant.

Count IV: Henkel and Reiter Land Company claim that the recorded mortgage creates a cloud on the property and that the mortgage should be decreed void, and that Henkel's title be quieted against all claims.

*See* (Dk. 1).

On June 28, 1994, ITT Residential Capital Servicing Corporation, formerly ITT Bowest Corporation, filed a notice of removal pursuant to 28 U.S.C. § 1446(b). Federal jurisdiction is asserted under diversity of citizenship. *See* 28 U.S.C. § 1332.[2]

This case comes before the court upon the plaintiffs' motion for remand (Dk. 5). In their motion, the plaintiffs essentially advance the following arguments:

1. Given the state nature of the plaintiffs' claims, judicial economy and comity are better served by having a state court adjudicate the plaintiff's respective rights arising under state law.

2. The burgeoning federal docket will needlessly prolong the litigation and disposition of this case, as this case is not complex and does not deserve the attention of the federal courts.

3. Reiter Land Company's claims are below the $50,000 statutory minimum required for diversity of citizenship jurisdiction.

In response to the plaintiffs' motion, ITT argues that the plaintiffs' "numerous bald assertions" are insufficient to demonstrate that a factual or legal basis exists to warrant remanding the case to state court. ITT concedes that Reiter Land Company's claims are below the statutory required minimum of $50,000, but nevertheless argues that the

court should deny the plaintiffs' motion. ITT contends that it is clear Count III, asserted on behalf of Henkel, "has been properly removed to federal court." "The only question, it seems to us, is whether Counts I, II, and IV should remain with the removed action or be remanded to state court." ITT then argues that the court has supplemental jurisdiction over those claims, even though those claims do not reach the jurisdictional amount. Specifically, ITT argues that the claims in Counts I, II, and IV[3] are so related that they form a part of the same case or controversy under Article III of the United States Constitution. ITT argues that the plaintiffs have identified no circumstance under which this court should decline supplemental jurisdiction.

As an additional argument, ITT argues, based upon its reading of Count II and its understanding of the law, that "Reiter [Land Company] actually has no viable claim whatever." Consequently, ITT suggests "that to permit [Reiter Land Company's] existence as a named party in this action to deprive defendant of its right to remove this action to federal court would be a miscarriage of justice."

The plaintiffs did not file a reply brief.

## Analysis

At the outset the court notes that **neither** the plaintiffs' motion nor ITT's response contains **any citation to any cases,** let alone any cases actually supporting their respective positions. While it may come as a surprise to the parties, the courts have dedicated more than a modicum of discussion to the somewhat complex issues presented by the plaintiffs' motion. The parties' briefs in this case raise more questions than they address or endeavor to resolve. In light of the parties' spartan efforts, the task of determining whether there is subject matter jurisdiction is primarily relegated to the court.[4]

---

**2.** In pertinent part, 28 U.S.C. § 1332 provides: The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,-000, exclusive of interest and costs, and is between—(1) Citizens of different States ...

**3.** Apparently, since the filing of this action, the disputed mortgage has been released. Attached

to ITT's response is a photocopy of the recorded release.

**4.** The plaintiffs complain that the federal courts' burgeoning docket will preclude a swift disposition of this case. The court simply notes that cases such as this one, where the parties invest little or no time into researching the dispositive

## Removal From State Court

Federal removal jurisdiction derives from federal statutes. The general removal provision is found at 28 U.S.C. § 1441(a), which provides in pertinent part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending." Consequently, "[o]nly state court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987).

■ Removal statutes are strictly construed, and any doubts about the propriety of removal are resolved in favor of remand. *Fajen v. Foundation Reserve Ins. Co., Inc.,* 683 F.2d 331, 333 (10th Cir.1982); *J.W. Petroleum, Inc. v. Lange,* 787 F.Supp. 975, 977 (D.Kan.1992); *see Mulcahey v. Columbia Organic Chemicals Co., Inc.,* 29 F.3d 148, 151 (4th Cir.1994) ("Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction."). The burden rests with the removing party to establish original federal jurisdiction. *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921); *Alexander v. Electronic Data Systems Corp.,* 13 F.3d 940, 948–949 (6th Cir.1994).

## Diversity of Citizenship

■ Federal courts have original jurisdiction of civil actions where complete diversity of citizenship and an amount in excess of $50,000 (exclusive of interest and costs) in controversy exist. 28 U.S.C. § 1332; *see Carden v. Arkoma Associates,* 494 U.S. 185, 187, 110 S.Ct. 1015, 1017, 108 L.Ed.2d 157, 163 (1990) ("Since its enactment, [the Supreme Court] has interpreted the diversity statute to require 'compete diversity' of citizenship."); *Strawbridge v. Curtiss,* 3 Cranch (7 U.S.) 267, 2 L.Ed 435 (1806). "Since an action is not removable from a state to federal court unless it might have been brought originally in a federal court, the basic principles of diversity jurisdiction, such as the requirement of complete diversity between plaintiffs and defendants and the amount in controversy requirement are fully applicable to Section 1441(b)." 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3723 at p. 306–307 (1985).

■ Complete diversity apparently exists in this case. The amount in controversy and the rules of aggregation are the issues implicated by the plaintiffs' motion. In *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), the Supreme Court held that multiple plaintiffs with separate and distinct claims, including plaintiffs bringing a class action suit,[5] must each present a claim satisfying the jurisdictional amount requirement of the diversity of citizenship statute.[6] *See* 14A Charles A Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3704 (2nd Ed.1985) (explaining aggregation rules); 1 James Wm. Moore, *Moore's Federal Prac-*

---

issues and thereby require the court to shoulder the entire burden of the task, require the court to unnecessarily invest its limited resources into deciding pending motions. Shortcomings such as these obviously contribute to any "delays" perceived by the plaintiffs.

5. In *Zahn,* the plaintiffs were asserting a class action. However, the Supreme Court essentially held that the rules governing aggregation of claims in class actions are the same as the rules governing the aggregation of plaintiffs' claims in non-class action suits.

6. Conversely, "aggregation is allowed when the plaintiffs unite to assert a 'common,' 'joint,' 'integrated' or 'undivided' right." 1 James Wm.

Moore, *Moore's Federal Practice* ¶ 0.97[3] at 917 (1994) (footnote omitted). "[C]laims occasionally can be aggregated in the class action context. *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969) and *Zahn* simply mean that the aggregation rules formulated for cases involving multiple plaintiffs or defendants apply to class actions. Thus, if a claim is asserted by or against a class jointly, or seeks to vindicate a right held in common, there is but a single right involved, and its value constitutes the amount in controversy." 1 *Moore's Federal Practice* ¶ 0.97[5] (footnote omitted).

In the case at bar, ITT does not argue, nor does it appear, that the plaintiffs are seeking to vindicate a common, joint, integrated or undivided right.

*tice* ¶ 0.97[3] (1994) (explaining rules of aggregation).

Whether the rules of aggregation gleaned from *Zahn* are still valid in all diversity of citizenship cases is a matter of some dispute since the passage of 28 U.S.C. § 1367.[7] In pertinent part, § 1367 provides:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

.     .     .     .     .

28 U.S.C. § 1367. The legislative history indicates that Congress, "[i]n providing for supplemental jurisdiction over claims involving the addition of parties" in subsection (a), "explicitly fill[ed] the statutory gap noted in *Finley v. United States.*" H.R.Rep. No. 734, 101st Cong.2d Sess. 29 (1990), U.S.Code Cong. & Admin.News 1990, 6875 [hereinafter House Report].[8] "The net effect of subsection (b) is to implement the principal rationale of *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978)." House Report at 6875, n. 16.[9]

■ The issue presented by this case is whether Congress intended to overrule the aggregation rules by the passage of § 1367. No appellate court appears to have definitively ruled on this issue.[10] It appears that

---

7. "Congress recently enacted 28 U.S.C. § 1367, which governs the area of pendent claim jurisdiction and refers to such jurisdiction as 'supplemental jurisdiction.' " *Miller v. Glanz,* 948 F.2d 1562, 1567–1568, n. 4 (10th Cir.1991). Section 1367 applies to civil actions commenced on or after December 1, 1990. *Id. See Baker v. Board of Regents of State of Kan.,* 991 F.2d 628, 634 (10th Cir.1993) ("Effective December 1, 1990, Congress enacted legislation, codified at 28 U.S.C. § 1367 (1976 & Supp.1992), which supersedes the common law pendent jurisdiction doctrine.").

8. In *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), the Supreme Court held that a district court, in a Federal Tort Claims Act suit against the United States, can not exercise supplemental jurisdiction over related state claims against additional, nondiverse defendants.

9. In *Kroger,* the Supreme Court held that in an action in which federal jurisdiction is based on diversity of citizenship, the plaintiff may not assert a claim against a third-party defendant when there is no independent basis for federal jurisdiction over that claim.

10. Although the Third Circuit has dedicated considerable discussion to the issue in a lengthy footnote, that discussion is essentially dicta in light of the fact that the court of appeals was not required to decide the issue. *See Packard v. Provident Nat. Bank,* 994 F.2d 1039, 1045–1046, n. 9 (3rd Cir.) ("Because *no* plaintiff alleges more than $50,000 in compensatory damages and punitive damages may not be recovered against a trustee under Pennsylvania law, we need not and do not resolve the issue [of whether *Zahn* is good law]."), *cert. denied sub nom,* —— U.S. ——, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993).

most, if not all, district courts have held that § 1367 does not overrule *Zahn* in the class action context. *See Riverside Transp. v. Bellsouth Telecommunications,* 847 F.Supp. 453 (M.D.La.1994) (joining "vast majority" of cases finding that the Supreme Court's holding in *Zahn* has not been overruled by § 1367); *Leroy Cattle Co., Inc. v. Fina Oil & Chemical Co.,* No. 93–1286–MLB, 1994 WL 151105, 1994 U.S.Dist. LEXIS 4802 (D.Kan. March 2, 1994) ("[E]ach and every court dealing directly with the application of § 1367 in the class action context has ruled, based upon the legislative history, that § 1367 does not abrogate *Zahn.* . . . This court perceives no reason why it should depart from these well reasoned decisions."); *Hairston v. Home Loan and Inv. Bank,* 814 F.Supp. 180 (D.Mass.1993); *Mayo v. Key Financial Services, Inc.,* 812 F.Supp. 277 (D.Mass.1993) (legislative history of 28 U.S.C. § 1367 indicates that the statute was not intended to affect the jurisdictional requirements for diversity class actions set forth in *Zahn* ).

In contrast to the apparent unanimity of courts addressing this issue in the class action context, in non-class actions the courts are divided as to whether § 1367 overrules § 1332's rules of aggregation. *Compare North American Mechanical Services Corp. v. Hubert,* 859 F.Supp. 1186 (C.D.Ill.1994) (Congress did not intend § 1367 to overrule § 1332's rules of aggregation); *Duet v. Lawes,* No. 94–0739, 1994 WL 151095, 1994 U.S.Dist. LEXIS 4755 (April 8, 1994) (rejecting analysis in *Garza* (cited below)); *Chouest v. American Airlines, Inc.,* 839 F.Supp. 412, 415 (E.D.La.1993); *Griffin v. Dana Point Condominium Ass'n,* 768 F.Supp. 1299, 1301 (N.D.Ill.1991); *C.D.S. Diversified v. Franchise Finance Corp.,* 757 F.Supp. 202 (E.D.N.Y.1991) (whether or not § 1367 applied, no jurisdiction to consider pendent party claim) *with Lindsay v. Kvortek,* 865 F.Supp. 264 (W.D.Penn.1994); *Patterson Enterprises v. Bridgestone/Firestone,* 812 F.Supp. 1152 (D.Kan.1993) (plain language of § 1367 has the effect of overruling *Zahn* in a non-class action case where no claim or party is added to the action); *Garza v. National American Ins. Co.,* 807 F.Supp. 1256 (M.D.La.1992) ("[T]his court finds that the

Congress said what it meant and the Congress meant what it said—the language of § 1367 unavoidably overrules these pre– § 1367 cases in those instances where the requirements of § 1367(a) are fulfilled and the exceptions of § 1367(b) are inapplicable.").

In *Patterson Enterprises,* three plaintiffs brought a non-class action diversity suit against one defendant arising from a single vehicle accident. The accident was allegedly caused by the failure of the tire manufactured by the defendant. In that case, one of the plaintiffs, Jere J. Patterson, claimed to have suffered damages in excess of $50,000; the other two plaintiffs, Patterson Enterprises, Inc. and Patterson Farms Trucking, each claimed to have suffered damages less than $50,000. The defendant argued that the district court lacked subject matter jurisdiction over the claims asserted by the two plaintiffs who claimed to have suffered damages less than $50,000. Specifically, the defendant argued that 28 U.S.C. § 1367 did not grant supplemental jurisdiction over the related claims of Patterson Enterprises and Patterson Farms Trucking because those claims lacked an independent basis for federal subject matter jurisdiction based upon the amount in controversy.

Judge Lungstrum disagreed, holding that the court had supplemental jurisdiction over Patterson Enterprises and Patterson Farms Trucking "under the plain meaning of 28 U.S.C. § 1367 because all of the claims relate to the same incident."

According to the statute, the exclusion set out in § 1367(b) only applies when a party or a claim is added to the action under Rules 14, 19, 20 or 24. In this case, Trucking's and Enterprises' claims were present in the original complaint and there was no need to add them under any of the listed rules. If the Congress had intended to exclude situations such as this one from the scope of supplemental jurisdiction, it could have done so just as easily as it excluded ones arising under Rules 14, 19, 20 and 24. Therefore, the § 1367(b) exclusion does not apply here and the test for whether supplemental jurisdiction should be applied is whether Trucking's and En-

terprises' claims are "so related to claims in the action" which have an independent basis for subject matter jurisdiction, i.e. Mr. Patterson's claims for property damage, that they "derive from a common nucleus of operative fact." *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

812 F.Supp. at 1154. In short, unpersuaded by its legislative history, the court concluded that the plain language of the statute authorized the exercise of supplemental jurisdiction.

This court concludes that § 1367 does not overrule § 1332's rules of aggregation in a non-class action suit. This court concludes that the language of the statute, its legislative history, a practical analysis of statute's likely operation, and the weight of authority support this interpretation.

■ In *Patterson Enterprises* the court held that the exclusion set out in § 1367(b) only applies when a party or a claim is added to the action under Rules 14, 19, 20 or 24. Because all of the plaintiffs in *Patterson Enterprises* joined in the original complaint, the court found that none of the exceptions applied. In this portion of the court's analysis, this court disagrees. While it is accurate that Rule 14 (Third Party Practice), Rule 19 (Joinder of Persons Needed for Just Adjudication) and Rule 24 (Intervention) are only implicated after the complaint is originally filed, Rule 20[11] is relevant both at the time the original complaint is filed as well as at the time an additional party is joined. In 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Fed. Practice and Procedure* § 1654 the authors explain:

Rule 20(a) has substantially expanded party joinder beyond that allowed under the common law rules and the state codes. Plaintiff joinder, which was limited to those asserting a joint right, now includes parties who are asserting a claim "jointly, severally, or in the alternative." This passage represents a significant improvement in party joinder practice in the federal courts, particularly in the context of joinder of plaintiffs asserting claims severally. Illustratively, suppose a bus collides with an automobile. All of the bus passengers who suffered personal injuries or property damage may join as plaintiffs in a single action against defendant under Rule 20(a), even though their respective claims are several rather than joint. Under earlier plaintiff joinder practice each plaintiff would have been forced to institute a separate action against defendant.

(footnotes omitted). *See e.g., Franklin v. Shelton*, 250 F.2d 92 (10th Cir.1957) (multiple plaintiffs alleging to have suffered injuries as a result of an automobile accident were authorized by Rule 20(a) to bring a single action against defendant). Consequently, the niche recognized by the court in *Patterson Enterprises* does not appear to exist, and therefore it appears that the rules of aggregation existing prior to the passage of § 1367 remain valid.

This conclusion is further buttressed by portions of the legislative history of § 1367. In pertinent part:

In diversity cases, the district courts may exercise supplemental jurisdiction, except when doing so would be inconsistent with the jurisdictional requirements of the diversity statute....

In accord with case law, the subsection also prohibits the joinder or intervention of persons a (sic) plaintiffs if adding them is

11. Fed.R.Civ.P. 20(a) provides:

(a) Permissive Joinder. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons (and any vessel, cargo or other property subject to admiralty process in rem) may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

inconsistent with section 1332's requirements.

House Report at 6874–6875.

In addition, while § 1367 has been the subject of much discussion and derision by commentators, *see* 1 *Moore's Federal Practice* ¶ 0.97[5] at 928, n. 20 ("There is no shortage of criticism of the supplemental jurisdiction statute."), both *Moore's Federal Practice* and *Federal Practice and Procedure* indicate that § 1332's rules of aggregation continue to exist after the passage of § 1367:

> Any remaining doubt as to the permissibility of exercising pendent party jurisdiction in diversity actions should be resolved by [the enactment of § 1367(b)]. It states that a district court does not have supplemental jurisdiction over claims by plaintiffs in a diversity action if exercising the jurisdiction would "be inconsistent with the jurisdictional requirements of § 1332." Because both complete diversity and the amount in controversy are "jurisdictional requirements" under § 1332, neither can be evaded by an appeal to supplemental or pendent party jurisdiction.

3A *Moore's Federal Practice* ¶ 20.07[5.–2]. In another section of the treatise, the authors opine:

> The 1990 supplemental jurisdiction statute, passed in reaction to *Finley*, permits pendent parties jurisdiction to the full extent allowed by the Constitution except, inter alia, when jurisdiction over the case is based solely on 28 U.S.C. § 1332. Courts cannot exercise pendent parties jurisdiction, then in diversity of citizenship cases. Thus, if the case does not meet the aggregation rules, the jurisdictionally insufficient claims must be dismissed.

1 *Moore's Federal Practice* ¶ 0.97[3] at 924.[12] "The practice of denying pendent-party jurisdiction in cases founded solely upon diversity will remain in place." 13 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3523 at 25 (1994 Pocket Part).

Finally, the court believes this construction of the statute to be the most likely interpretation of Congressional intent. Congress could have chosen to only authorize the court to exercise supplemental jurisdiction over claims asserted by persons whose claims do not reach the requisite jurisdictional amount, but who, by whatever fortuity, joined in the original complaint. The court is uncertain, however, as to what interest would be furthered by providing for such a distinction between classes of plaintiffs. Such a distinction would tend to only reward those persons with the foresight to bring a single action, while latecomers to an action, who could otherwise satisfy the rules of joinder, would be unable to assert their claims in federal court.

In short, the court concludes that the adoption of § 1367 does not overrule § 1332's rules of aggregation in a non-class action case.

█ In light of this conclusion, the court must next consider ITT's argument that Reiter Land Company's claims are completely devoid of merit. Essentially, ITT contends that the court should not remand this case to state court as Count II asserted by Reiter Land Company fails to state a cognizable claim.

The court has reviewed Reiter Land Company's claims. While ITT raises several valid points, the court is unwilling to conclude as a matter of law that Reiter Land Company does not assert some viable claim against ITT. *See generally, Muller v. TSC Industries, Inc.*, No. 92–4171–C, 1992 WL 331286, 1992 U.S.Dist. LEXIS 17315 (D.Kan. Oct. 2, 1992) (discussing fraudulent joinder). Consequently, the court is compelled to remand this case to the Jewel County District Court. *See Riverside Transportation*, 847 F.Supp. at 457 ("Since the Court may no longer divide claims where the Court's jurisdiction is

---

12. However, in a subsequent section of the treatise titled "Class Actions and Shareholders' Derivative Suits", the authors lambast the Supreme Court's decision in *Zahn* and urge the courts to consider it overruled:

> *Zahn* is a very questionable decision.... We feel that the courts should consider *Zahn* overruled. That result is compelled by the statutory language.
>
> *Moore's Federal Practice* ¶ 0.97[5] (footnote omitted).

based on § 1332, the Court finds that the entire action must be remanded to the state court."); *Baylor v. District of Columbia,* 838 F.Supp. 7, 8–9 (D.D.C.1993); David D. Siegel, *Commentary on 1990 Revision,* 28 U.S.C. § 1441(c) (West Publishing Co. 1994) ("Congress kept the diversity jurisdiction and kept § 1441(c) as well, but removed it from application to diversity cases. Under the amendment, a removal under § 1441(c) was thenceforth to be permitted only in a federal question case, i.e., a case in which subject matter jurisdiction is based on the claim's arising under federal law.").

IT IS THEREFORE ORDERED that the plaintiffs' motion to remand (Dk. 5) is granted. This case is remanded to the District Court of Jewel, County, Kansas.