that lack a fixed meaning. Great efforts are ordinarily made to eliminate the natural ambiguity that exists in so many of the words and phrases we use daily." *Id.* at 541.

### Attorney's Fees

 Finally, this court turns to the question of whether plaintiff is entitled to an award of attorney's fees. The Seventh Circuit has designated five factors for this court to consider when faced with a motion for attorney's fees under ERISA:

1. The degree of the offending parties' culpability or bad faith;
2. The degree of the ability of the offending parties to satisfy personally an award of attorneys' fees;
3. Whether or not an award of attorneys' fees against the offending parties would deter other persons acting under similar circumstances;
4. The amount of benefit conferred on members of the pension plan as a whole;
5. The relative merits of the parties' positions.

*Janowski v. International Brotherhood of Teamsters Local No. 710 Pension Fund,* 673 F.2d 931, 940 (7th Cir.1982).

This court concludes, based on those factors, that an award of attorney's fees is not warranted. There is no evidence from this record that the defendant acted in bad faith, a conclusion buttressed by the fact that this court determined that the "mental illness" provision in this policy was ambiguous. In addition, there would be little deterrent value to other parties if this court were to sanction the defendant for conduct it found to be tenable. Finally, although the plaintiff prevailed, the defendant's position was far from meritless. As discussed in this opinion, courts have decided the same questions addressed today in a variety of different ways.

### CONCLUSION

For the foregoing reasons this court grants the plaintiff's motion for summary judgment and denies the defendant's motion for summary judgment. As a result, the $25,000 mental illness limitation does not apply. The parties' motions for attorney's fees are denied.

**CORPORATE RESOURCES, INC., a Michigan corporation, Plaintiff,**

v.

**SOUTHEAST SUBURBAN AMBULATORY SURGICAL CENTER, INC., an Illinois corporation, a/k/a Lincoln Medical Center, Ltd., Richard Egwele, M.D., Susan Egwele, M.D., Vishnu Mathur, M.D., Joseph Kibuyaga, M.D., Evans Fiakpui, M.D., Hee Han Kim, M.D., Rita Oganwu, M.D. and Sanath Kumar, M.D., Defendants.**

No. 91 C 3718.

United States District Court, N.D. Illinois, E.D.

Sept. 26, 1991.

Christina Doris Babakitis and James E. Coston, Coston, Lande & Sapir, Chicago, Ill., for plaintiff.

William H. Mansker, Law Offices of William H. Mansker, Chicago, Ill., for defendants.

MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

*Background*

Plaintiff Corporate Resources, Inc. ("C.R.I.") is a corporation incorporated in Michigan with its principal place of business in Michigan. It is in the business of providing financing for leased equipment.

Defendant, Southeast Suburban Ambulatory Surgical Center ("Southeast") is a corporation incorporated in Illinois with its principal place of business in Illinois. It is in the business of providing medical care. The eight individual defendants are physicians who are citizens and residents of Illinois.

Plaintiff alleges that each of the counts in its ten-count complaint arises under this court's diversity jurisdiction. 28 U.S.C. 1332(a). Defendants have moved this court to dismiss all ten counts arguing that for each count the amount in controversy fails to exceed $50,000, as is required for diversity jurisdiction.

*Facts*

Southeast signed a Master Lease Agreement with C.R.I. for the lease of certain medical and other equipment. The parties then entered into three separate Lease Orders pursuant to the Master Lease Agreement. Those Lease Orders were entered into between January 5 and May 25, 1989. Two of the three Lease Orders provided for monthly payments to be paid for an initial term of 45 months. The other provided for monthly payments to be paid for an initial term of 48 months. The eight physicians who are defendants in this action each made written personal guaranties to C.R.I. on behalf of Southeast. The eight guaranteed to C.R.I. "the prompt payment in full, when due, or accelerated following default, of every Lease Payment due under the Lease Agreement or any Lease Order" entered into by Southeast. C.R.I.'s complaint alleges that in November, 1990, Southeast ceased making its monthly payments to the plaintiff.

In its suit, C.R.I. has brought two causes of action against Southeast. C.R.I. has sued under Count I, styled "Breach of Contract," for $243,429.69. It reached that figure first by alleging that Southeast's failure to make timely rental payments was a breach of the Lease Agreement and that the Lease Agreement includes a provision entitling C.R.I. to demand accelerated payment of all amounts due under the lease in case of default. Consequently, C.R.I. alleges that Southeast owes it a total of $174,398.80 in accelerated lease payments (even after crediting Southeast $10,000 for a payment Southeast made in May, 1990). C.R.I. then added to the $174,398.80 the equipment's fair market value which it estimated to be $56,982. C.R.I. further alleges that it is also owed late charges of $2,048.80 and attorney's fees of $10,000.

In Count II, styled "Account Stated," C.R.I. demands $174,398.80 in relief from Southeast, the amount it claims it is entitled to in lease payments after exercising the acceleration clause. Each of Counts III through X is styled "Personal Guaranty" and is directed against a particular one of the eight physicians. Counts III through X request varying amounts from the eight physicians, ranging from $21,908.66 to $243,429.60. Five of the counts against the individual defendants are for less than $50,000.

*Amount in Controversy Exceeds $50,000 in Count I*

Defendants have moved to dismiss all of the counts arguing that this court lacks jurisdiction because they claim that the amount in controversy does not exceed $50,000. They first argue that under Michigan law C.R.I. was not entitled to enforce the acceleration clause in the lease because it accepted a $10,000 payment in May, 1991 from Southeast. Relying on *Theatre Equipment Acceptance Corp. v. Betman,* 259 Mich. 245, 242 N.W. 903 (1932), Defendants argue that C.R.I. waived its right to exercise the acceleration option in case of default. Defendants then state that "the only recovery that could be had by C.R.I. is those back payments still owing on the date of filing." (Def.Br. at 8). They then urge this court to "take judicial notice that, according to Plaintiff's allegations, those sums do not exceed $50,000, and therefore, the instant case should be dismissed for want of jurisdiction." *Id.*

This court need not address Defendants' fancy argument, however, because the $243,429.60 demanded by C.R.I. was not all for amounts owed as lease payments. C.R.I.'s complaint alleged that over $50,000 of the amount demanded was for the value of the equipment leased. Accordingly, this court denies Plaintiff's motion to dismiss Count I against Southeast.

*Pendent Supplemental Jurisdiction: Count II*

Defendants moved also to dismiss count II, styled "Account Stated," on the grounds that *Theatre Equipment Acceptance* prevented the plaintiff from exercising the acceleration clause and that therefore count II does not allege an amount in controversy in excess of $50,000. Again, this court need not examine the merits of that argument. Even if the plaintiff is not permitted by Michigan law to enforce the acceleration clause, this court may still exercise pendent jurisdiction over count II. A federal court may exercise pendent jurisdiction over state claims for which the court lacks an independent basis for jurisdiction if those state claims are closely related to another claim over which the court does have original jurisdiction. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *see also* 28 U.S.C. § 1367 (codifying doctrine of pendent jurisdiction as an aspect of "supplemental jurisdiction"). As discussed above, this court does in fact have original jurisdiction over count I. Because count II arises from the same core of operative facts as count I, this court finds that considerations of judicial economy weigh in favor of the exercise of supplemental jurisdiction over count II.

*Pendent Party Supplemental Jurisdiction: Counts III through X*

Defendants Drs. Vishnu Mathur, Evans Fiakpui, Hee Han Kim, Rita Oganwu and Sanath Kumar each move that the counts against them alleging breaches of personal guaranties should be dismissed because C.R.I. has demanded less than $50,000 in relief from each of them. The law is settled that if a single plaintiff asserts claims against more than one defendant, and each defendant's liability is several on the respective claims, jurisdiction attaches only to those claims which individually involve matters exceeding the jurisdictional amount. *See Motorists Mutual Insurance Co. v. Simpson,* 404 F.2d 511 (7th Cir.1968). The complaint does not allege that the individual physician defendants are jointly and severally liable (although the memorandum in opposition of the motion to dismiss states that they are).

Here, however, as explained above, this court finds jurisdiction over Southeast on the breach of contract claim (count I). That jurisdiction is based on diversity. The question now really is whether this court can exercise "pendent party jurisdiction" over the claims against the physicians. "Pendent party jurisdiction" expands the theory of pendent jurisdiction, explained above, to cases in which the pendent state claims are not against the same defendant named in the claim with independent federal jurisdiction. The individual doctors would be "pendent parties" if this court can and does exercise jurisdiction over them.

The Supreme Court in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), and *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), rejected the doctrine of pendant party jurisdiction. Congress, however, overrode the *Aldinger* and *Finley* decisions when it passed the Judicial Improvement Act of 1990. *See* Pub.L. 101–650, 104 Stat. 5089. That Act provides that:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(b). With that last sentence, Congress has enabled federal district courts to exercise pendent party jurisdiction (provided that the exercise of the jurisdiction is consistent with the Constitution).

The parties have not addressed the doctrine of "pendent" or "supplemental" jurisdiction in their briefs. Nonetheless, this court holds that it may, consistent with Article III of the Constitution, exercise jurisdiction over all the individual defendants. This court feels that its exercise of supplemental (pendent party) jurisdiction with re-

spect to all of the counts against the individual defendants is in the interests of judicial economy, because all the counts in this action "derive from a common nucleus of operative facts" and are such that a plaintiff would "ordinarily be expected to try them in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138.

Therefore, this court denies defendants' motion to dismiss Counts V, VII, VIII, IX and X of the complaint.

### Conclusion

Defendants' motion to dismiss is denied in its entirety. The complaint alleges properly a cause of action invoking federal jurisdiction for Count I. The court will exercise supplemental jurisdiction over all other counts of the complaint.