**Judy D. LINDSAY, Amy E. Lindsay, Rodney Lindsay, Sr., Plaintiffs,**

v.

**Charles J. KVORTEK, Kasto Service, Inc., Defendants.**

**Civ. A. No. 93–2076.**

United States District Court, W.D. Pennsylvania.

Sept. 12, 1994.

Adrienne Johnson, Beaver, PA, for plaintiffs Judy D. Lindsay, Amy E. Lindsay, Rodney Lindsay, Sr.

Charles D. Sheehy, Pittsburgh, PA, for defendants Charles J. Kvortek, Kasto Service, Inc.

## MEMORANDUM ORDER

STANDISH, District Judge.

On June 15, 1994, this case was referred to United States Magistrate Judge Francis X. Caiazza for pretrial proceedings in accor-

dance with the Magistrates Act, 28 U.S.C. §§ 636(b)(1)(A) and (B), and Rules 72.1.3 and 72.1.4 of the Local Rules for Magistrates.

The magistrate judge's report and recommendation, filed on August 4, 1994, recommended that defendants' Motion to Dismiss Count II of Amended Complaint and to Strike plaintiff's punitive damages claim be denied. The parties were allowed ten (10) days from the date of service to file objections. Service was made on all parties and objections were filed by defendants on August 22, 1994. After *de novo* review of the pleadings and documents in the case, together with the report and recommendation and objections thereto, the following order is entered:

AND NOW, this 12th day of September, 1994,

IT IS HEREBY ORDERED that defendants' Motion to Dismiss Count II of Amended Complaint as to Amy E. Lindsay and to Strike Plaintiff's Punitive Damages Claim (Doc. # 12) is DENIED.

The report and recommendation of Magistrate Judge Caiazza, Document No. 16, dated August 4, 1994, is adopted as the opinion of the court.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

CAIAZZA, United States Magistrate Judge.

### I. RECOMMENDATION

It is recommended that defendants' Motion to Dismiss Count II of Amended Complaint as to Amy E. Lindsay and to Strike Plaintiffs' Punitive Damages Claim (Doc. # 12) be denied.

### II. REPORT

The parties will no doubt be surprised that a simple motion to dismiss an amended complaint has resulted in the excursion into the unplumbed depths of civil procedure that follows. Nevertheless, the issues that have been raised (explicitly and implicitly) touch the fundamental concern of the subject matter jurisdiction of the federal courts. There-

fore, the die has been cast, and the Court is not free to ignore it.

The issues will be addressed in the following sequence:

I. Procedural history.

II. Defendants' motion to strike the punitive damages claims.

III. Original jurisdiction over Count II of the Amended Complaint.

IV. Supplemental jurisdiction over Count II of the Amended Complaint.

### I. *Procedural History*

On December 18, 1991, plaintiffs Judy Darlene Lindsay and Amy E. Lindsay were involved in an automobile accident with defendant Charles J. Kvortek on Interstate 79 in Cussewago Township, Crawford County, Pennsylvania. Plaintiff Rodney Lindsay Sr. was in a separate vehicle in front of his wife (Judy Lindsay) and daughter (Amy Lindsay) and was not involved in the accident. On December 13, 1993, plaintiffs filed the instant action against defendant Kvortek and Kasto Service, Inc., (together, the defendants), the owner of the vehicle driven by Kvortek. On January 7, 1994, defendants filed a motion to dismiss Count II of the Complaint as to Amy E. Lindsay, on the grounds that Count II failed to allege an amount in controversy in excess of $50,000 as required to sustain diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). On February 11, 1994, plaintiffs filed an Amended Complaint. The Amended Complaint contained the following changes to the original Complaint:

1. Paragraph 10, which had alleged that defendant Kvortek "drove negligently or with reckless indifference" was amended to state that Kvortek "drove with gross negligence or with reckless indifference."

2. Paragraph 11, which had asserted that jurisdiction "is founded upon 28 U.S.C. 1332, diversity and pendent jurisdiction" was amended to allege only diversity jurisdiction.

3. The "wherefore" clauses of each of the three counts were amended to request punitive damages.

4. The ad damnum clause of Count II was raised from "in excess of $10,000" to "in excess of $50,000."

Concurrently, plaintiffs filed a reply to defendants' motion to dismiss, asserting that the Amended Complaint which alleged punitive damages had mooted defendants' argument that Count II failed to allege the requisite amount in controversy.

On March 4, 1994, Magistrate Judge Benson issued a Report and Recommendation, in which he recommended that defendants' motion to dismiss Count II of the Complaint be denied. On March 7, 1994, defendants filed the instant motion, in which they made the same arguments concerning lack of subject matter jurisdiction over Count II of the Amended Complaint as they had presented in their motion to dismiss the original complaint. In addition, defendants included a motion to strike all of the requests for punitive damages in the Amended Complaint.[1] Plaintiffs, who were given until June 14, 1994 to file a response, have failed to reply. Because the motion to strike plaintiffs' requests for punitive damages would, if granted, affect plaintiffs' ability to allege $50,000 in Count II of the Amended Complaint, the Court should first address the motion to strike.[2]

## II. *Motion to Strike Punitive Damages Claim*

Defendants move the Court to strike plaintiffs' requests for punitive damages, asserting that plaintiffs cannot meet the standard necessary to maintain such claims. Defendants argue that: 1. the plaintiffs have not alleged outrageous conduct as required but only gross negligence, which will not support a claim for punitive damages; and 2. the averments of plaintiffs' Amended Complaint "do not demonstrate the culpable mental state of the defendants necessary, under existing Pennsylvania law, to prove the type and kind of recklessly indifferent conduct which is necessary to make out a claim for punitive damages." (Defs.' Br.Supp.Mot.Dismiss at 10.)

■ With respect to defendants' second argument, it does not reflect an accurate picture of Pennsylvania law. The cases cited by the defendants do hold that the kind of situation presented in this case was not sufficient to set forth a claim for punitive damages under the applicable section of Pennsylvania's No-Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.301 (repealed) (the NMVIA). *Harvey v. Hassinger*, 315 Pa.Super. 97, 461 A.2d 814, 817 (1983); *Smith v. Brown*, 283 Pa.Super. 116, 423 A.2d 743, 745 (1980); *Teagle v. Hart*, 279 Pa.Super. 487, 421 A.2d 304, 306 (1980). This was because the NMVIA specifically provided certain exceptions to no-fault liability, and gross negligence and reckless disregard were determined not to fall within any of the statutory exceptions. *Reimer v. Delisio*, 296 Pa.Super. 205, 442 A.2d 731, 733 (1982), *aff'd without opinion*, 501 Pa. 662, 462 A.2d 1308 (1983).

However, the NMVIA has been repealed, and its successor, the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1701, does not contain a provision equivalent to § 301 of the NMVIA. The Court cannot rely on case law interpreting a repealed statute to determine whether punitive damages may be asserted in this action. Therefore, the Court must turn to general principles of Pennsylvania law to decide this issue.

As a general guide in assessing punitive damages, Pennsylvania recognizes the principles set forth in § 908(2) of the Restatement

---

1. The defendants may not have received the Report and Recommendation at the time they filed their motion to dismiss the Amended Complaint. Ordinarily, the filing of an amended complaint "moots" a motion to dismiss such that a defendant must file a new motion to dismiss the amended complaint. In this instance, because plaintiffs also filed a reply to defendants' motion to dismiss, Magistrate Judge Benson opted to respond to the pending motion.

2. The Amended Complaint states that "Plaintiff Amy Lindsay suffered abdominal and back pain, menstrual difficulty, and a bruise to her knee as well as shock, fright and distress. Plaintiff Amy Lindsay's injuries have now largely healed with no known permanent harm." (Am.Compl. ¶ 23.) In the original complaint, plaintiffs alleged the same facts but requested an amount "in excess of $10,000." Thus, it would appear that plaintiffs rest their sufficiency of the amount in controversy in Count II upon the addition of punitive damages to Amy Lindsay's compensatory damage claims.

(Second) of Torts. This section provides that:

> Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant.

Restatement (Second) of Torts § 908(2). *See Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 747–48 (1984). The Court of Appeals has recognized that:

> Pennsylvania cases have adopted a very strict interpretation of "reckless indifference to the rights of others." The most recent Supreme Court case is *Martin v. Johns–Manville Corp.*, [508 Pa. 154, 494 A.2d 1088 (Pa.1985) ] in which the opinion announcing the judgment of the court ("the plurality opinion") held that a jury may award punitive damages only where the evidence shows the defendant knows, or has reason to know, of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act in conscious disregard of, or indifference to, that risk. *See Martin*, 494 A.2d at 1097. In this view, it is not sufficient to show that a reasonable person in the defendant's position would have realized or appreciated the high degree of risk from his actions. *Id.* The *Martin* plurality opinion rejects Restatement § 500's general definition of "reckless *disregard* of safety" as the standard for imposition of punitive damages. That section states, "In order that an actor's conduct may be reckless, it is not necessary that he himself recognize it as being extremely dangerous.... It is enough that he knows or has reason to know of circumstances which would bring home to the realization of the ordinary reasonable man the highly dangerous character of his conduct." Restatement (Second) of Torts § 500, comment c. Instead, *Martin* requires the more culpa-

ble mental state of conscious indifference to another's safety as the test for "reckless *indifference*" under Restatement § 908. There must be some evidence that the person actually realized the risk and acted in conscious disregard or indifference to it. *Burke v. Maassen*, 904 F.2d 178,. 181–82 (3d Cir.1990). The Court of Appeals in *Burke* proceeded to apply the principles of § 908(2) and held that the evidence in the case did not support an award of punitive damages when a truck driver fell asleep at the wheel and caused an accident, even though he had lied on his application about his driving experience and had violated federal safety regulations that limited the hours that may be driven in a single day. "The record is critically deficient of evidence showing Maassen consciously appreciated the risk of fatigue and the potential for fatal accidents that accompanies driving for more than ten hours." *Id.* at 183.

However, this is not a motion requesting a court to remove the issue of punitive damages from the jury on the grounds that the evidence does not support it; rather, it is a motion to strike a portion of plaintiffs' Amended Complaint. "A motion to strike can be treated as a motion to dismiss for failure to state a claim upon which relief could be granted." *Brown v. Seebach*, 763 F.Supp. 574, 583 (S.D.Fla.1991). In this instance, defendants' motion amounts to an assertion that plaintiffs' requests for punitive damages fail to state a claim upon which relief can be granted, and the motion should be evaluated using the appropriate standard.[3]

A motion to dismiss pursuant to Rule 12(b)(6) cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegation." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The issue is not whether the plaintiffs will prevail at the end but only whether they should be entitled to offer evidence to support their claim. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104

---

**3.** In addition, defendants aver that their entire motion is brought "pursuant to Rule 12(b) of the

Federal Rules of Civil Procedure." Motions to strike are governed by Rule 12(f).

L.Ed.2d 338 (1989); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint must be read in the light most favorable to the plaintiffs and all well-pleaded material allegations in the complaint must be taken as true. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

■ The Amended Complaint alleges as follows:

In the morning of December 18, 1991, Plaintiffs encountered a blinding snowstorm with freezing or near-freezing temperatures that rendered the highway slippery and treacherous while limiting visibility severely.

At approximately 11:00 A.M., Defendant Charles Kvortek passed Plaintiffs in the left lane of the highway and disappeared into the swirling snow. Moments later, he lost control of his vehicle and spun around several times. Defendant Kvortek was still spinning as Plaintiffs Judy and Amy Lindsay caught sight of him again. Defendant travelled in the wrong direction toward the vehicle driven by Plaintiff Judy D. Lindsay, striking Plaintiffs' vehicle head-on.

Defendant Charles J. Kvortek's [sic] drove with gross negligence or with reckless indifference by travelling too fast for conditions, by passing in a treacherous snowstorm in the uncleared left land [sic], and by failing to maintain control of his vehicle, which gross negligence or reckless indifference is the direct and proximate cause of Plaintiffs' injuries described herein.

Pls.' Am.Compl. ¶¶ 8–10. The Court cannot say as a matter of law that defendant Kvortek's conduct, if proven as alleged in the Amended Complaint, was not "outrageous" so as to support an award of punitive damages. *See In re One Meridian Plaza Fire Litig.,* 820 F.Supp. 1460, 1488–89 (E.D.Pa. 1993) (differentiating between claims that could support an award for punitive damages—failure to properly install or inspect a standpipe system and failure to respond to a fire alarm—from those that constituted only ordinary negligence—failure to segregate flammable materials, failure to investigate a

strong odor). *See also Burke,* 904 F.2d at 183 n. 5 (suggesting methods of proof by admission and otherwise by which plaintiffs could have demonstrated that the defendant knew of and appreciated the risks of driving while fatigued); *McClellan v. Health Maintenance Org. of Pa.,* 413 Pa.Super. 128, 604 A.2d 1053, 1061 (premature to dismiss plaintiff's claim for punitive damages in medical malpractice action), *appeal denied,* 532 Pa. 664, 616 A.2d 985 (1992). At this early stage of the case, the Court cannot assume that plaintiffs will be unable to present any evidence to support a claim for punitive damages.

### III. *Original Jurisdiction Over Count II of the Amended Complaint*

■ Section 1332 provides that:

The district courts shall have original jurisdiction of all civil actions where the amount in controversy exceeds the sum of $50,000, exclusive of interest and costs, and is between—

(1) citizens of different States....

28 U.S.C. § 1332(a). Ordinarily, when the court examines the issue of amount in controversy, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal...." *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). In determining whether the necessary amount in controversy is presented to support diversity jurisdiction, actual and exemplary damages must be aggregated. *Bell v. Preferred Life Assurance Soc.,* 320 U.S. 238, 240, 64 S.Ct. 5, 6, 88 L.Ed. 15 (1943). However, the fact that plaintiffs are not prohibited from asserting punitive damages as a matter of law does not dispose of the issue of whether plaintiffs have stated a sufficient amount of damages in Count II of the Amended Complaint to satisfy the amount in controversy requirement for original jurisdiction.

One inquiry, as defined by the Court of Appeals, is whether "a claim for punitive damages is 'patently frivolous and without

foundation' because such damages are unavailable as a matter of law, [such that] that claim must be stricken from the amount in controversy." *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1046 (3d Cir.1993) (quoting *Gray v. Occidental Life Ins. Co.*, 387 F.2d 935, 936 (3d Cir.1968)), *cert. denied sub nom. Upp v. Mellon Bank, N.A.*, —— U.S. ——, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993). But "[i]n addition, when it appears that such a claim comprises the bulk of the amount in controversy and may have been colorably asserted solely or primarily for the purpose of conferring jurisdiction, that claim should be given particularly close scrutiny." *Id.* (citing *Zahn v. International Paper Co.*, 469 F.2d 1033, 1033–34 n. 1 (2d Cir.1972), *aff'd*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973)). *See also Singer v. State Farm Mutual Auto. Ins. Co.*, 785 F.Supp. 510, 512 (E.D.Pa.1992) (questioning whether the Pennsylvania statute allowing punitive damages for bad faith conduct by insurers would apply to plaintiff's claim for unpaid medical bills and determining that, in any event, plaintiff could not use a punitive damage claim of almost $45;000 to bridge the jurisdictional gap).

■ As discussed *supra*, the Court should not dismiss plaintiffs' requests for punitive damages on the grounds that they are unavailable as a matter of law. Therefore, the Court must determine whether the request for punitive damages with respect to Count II of the Amended Complaint comprises the bulk of the amount in controversy and may have been asserted for the purposes of conferring jurisdiction.

The gravamen of plaintiffs' Amended Complaint is, as stated, that defendant Kvortek drove in a grossly negligent manner under severe weather conditions. Such conduct could theoretically support a claim for punitive damages. But on this record, the Court cannot say that plaintiffs have offered any support for the punitive damages claim. Although plaintiffs should not be penalized for amending their complaint, the Court cannot ignore the fact that the Amended Complaint differs from the original Complaint only in that it adds claims for punitive damages, on the basis of which plaintiffs assert that they have satisfied the amount in controversy requirement for Count II. From the faces of the two complaints, the punitive damages claim would appear to account for approximately $40,000, the difference between the two ad damnum clauses. (*See* Pls.' Reply Defs.' Mot.Dismiss Compl.) Moreover, although plaintiffs were given ample opportunity to respond to defendants' motion challenging the amount in controversy in Count II of the Amended Complaint, they have failed to do so.[4] "The person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation." *Packard*, 994 F.2d at 1045 (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936)). Plaintiffs have not sustained their burden of demonstrating that Count II satisfies the amount in controversy requirement. Therefore, the Court cannot assert original diversity jurisdiction over Count II of the Amended Complaint.

### IV. Supplemental Jurisdiction Over Count II of the Amended Complaint

■ Defendants note in passing that plaintiffs "concede that there is no pendent jurisdictional claim upon which Amy Lindsay may or could have maintained her lawsuit against the defendants." (Defs.' Br.Supp.Mot.Dismiss at 2.) That is not entirely accurate: plaintiffs do not address the issue of supplemental jurisdiction[5] in their Amended Complaint. The Court, however, is not free to ignore this issue, and must raise it sua sponte. *Employers Ins. of Wausau v. Crown Cork & Seal Co.*, 905 F.2d 42, 45 (3d

---

4. On April 19, 1994, plaintiffs filed a motion for an extension of time to respond to defendants' motion to dismiss the Amended Complaint, and on April 21, 1994, Magistrate Judge Benson entered an order allowing plaintiffs until June 14, 1994 to respond. As of the date of this Report and Recommendation, plaintiffs have failed to respond.

5. As discussed in detail *infra*, by Congress' enactment of the Judicial Improvements Act in 1990, the concepts of "pendent" and "ancillary" jurisdiction no longer exist. Congress has defined the scope of *supplemental* jurisdiction that federal district courts may exercise, and the Court will discuss the concept accordingly.

Cir.1990); *Liakakos v. CIGNA Corp.*, 704 F.Supp. 583, 586 (E.D.Pa.1988).

*The Slippery and Treacherous Highway of Federal Supplemental Jurisdiction*

■ Any discussion of the doctrines now subsumed under the term supplemental jurisdiction must begin with the Supreme Court's seminal case of *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In *Gibbs*, plaintiff brought suit under federal law—the Labor Management Relations Act—and the common law of Tennessee against the United Mine Workers for unlawful conspiracy to interfere with his contracts. The Court held that, in order for the district court to exercise "pendent" jurisdiction over Gibbs' state law claim (which did not involve diverse parties and therefore could not exist under original jurisdiction), the "state and federal claims must derive from a common nucleus of operative fact ... such that [the plaintiff] would ordinarily be expected to try them all in one judicial proceeding...." *Id.* at 725, 86 S.Ct. at 1138.

In *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), the Court addressed a situation which altered the *Gibbs* scenario in two respects: 1. the original claim had been based on diversity of citizenship rather than a federal question; and 2. the "pendent" claim would have involved a "pendent party." Specifically, the original defendant brought a third-party action (for which diversity of citizenship would not have been required, under the doctrine of "ancillary jurisdiction"), but then the plaintiff attempted to initiate suit against the third-party defendant, and diversity did not exist. Although the Court accepted the assumption that the *Gibbs* "common nucleus of operative fact" test would determine whether the plaintiff's claim was sufficiently related to her original claim (*id.* at 371 n. 10, 98 S.Ct. at 2401 n. 10), the Court refused to allow the claim against the impleaded party. The Court's rationale was that "a plaintiff could defeat the ′statutory requirement of complete diversity by the simple expedient of suing only those defendants who were of diverse citizenship and waiting for them to implead nondiverse defendants." *Id.* at 374, 98 S.Ct. at 2403 (footnote omitted).

· · · ·

In *Aldinger v. Howard*, the Court held that pendent party jurisdiction could be asserted if Congress "in the statutes conferring jurisdiction has not expressly or by implication negated its existence." 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976). Because § 1332 requires diversity of citizenship, the district court could not exercise jurisdiction over plaintiff's state-law claim against a non-diverse defendant, who was not the same party as the defendant originally sued pursuant to federal question jurisdiction. Finally, with respect to the issue of amount in controversy, the Court has held that, if original jurisdiction is based upon diversity of citizenship, each plaintiff must satisfy the requisite amount in controversy with respect to each claim asserted. *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). *Zahn* and it predecessor, *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), had extended what might be called the "complete amount in controversy" doctrine [6] to the class action situation, such that, assuming that plaintiffs are not uniting to enforce a common and undivided interest, "[e]ach plaintiff in a Rule 23(b)(3) class action must satisfy the jurisdictional amount, and any plaintiff who does not must be dismissed from the case." *Zahn*, 414 U.S. at 301, 94 S.Ct. at 512.

Therefore, there is no doubt that, pursuant to the historical case law, Count II of the Amended Complaint could not be maintained under pendent party jurisdiction because each and every count of a complaint purporting to arise under the Court's diversity jurisdiction (and particularly each count involving a separate party) would have to meet the amount in controversy requirement on its own.

---

**6.** The Supreme Court has long held that § 1332 requires "complete diversity," that is, every plaintiff must be of diverse citizenship from every defendant. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

*Disappearing Into the Swirling Snow*

The enactment of the Judicial Improvements Act of 1990 has cast some doubt on the requirement for complete amount in controversy, both in the class action context and outside of it. The Act included a section on supplemental jurisdiction, which attempted for the first time to codify (and at least in part, to alter) case law holdings previously discussed in the areas of "pendent," "ancillary" and "pendent party" jurisdiction. Section 1367 provides that:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution....

> (b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such

claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367.

Specifically, § 1367 was enacted in response to the Supreme Court's holding in *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), which had prevented a plaintiff who had satisfied original subject matter jurisdiction by means of a claim under the Federal Tort Claims Act against the United States from adding a transactionally related state claim against a different, non-diverse defendant. *Finley* settled an issue left open by the Court in *Aldinger*—whether pendent party jurisdiction could be maintained when the federal law claim involved *exclusive* federal jurisdiction—but the result was widely viewed as unduly harsh: no pendent party jurisdiction could be asserted unless Congress clearly provided for it. Thus, § 1367 provides that "supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties" (28 U.S.C. § 1367(a)), and *Finley* is overruled.

Unfortunately, however, § 1367 does more than overrule *Finley.* Indeed, the statute has been the subject of considerable debate over the questions of whether it merely enacts preexisting case law or alters the law and if so, how far.[7] Only one issue is relevant to the instant action: does § 1367 overrule the holding of *Zahn* in a non-class action context?[8] On its face, the statute appears to allow for supplemental jurisdiction in this situation—subsection (a) provides that the district courts "shall" have supplemental jur-

---

7. *See, e.g.,* Richard D. Freer, *Compounding Confusion and Hampering Diversity: Life After Finley and the Supplemental Jurisdiction Statute,* 40 Emory L.J. 445 (1991); Thomas D. Rowe, Jr., Stephen B. Burbank & Thomas M. Mengler, *Compounding or Creating Confusion About Supplemental Jurisdiction? A Reply to Professor Freer,* 40 Emory L.J. 943 (1991); Thomas C. Arthur & Richard D. Freer, *Grasping at Burnt Straws: The Disaster of the Supplemental Jurisdiction Statute,* 40 Emory L.J. 963 (1991); Karen Nelson Moore, *The Supplemental Jurisdiction Statute: An Important But Controversial Supplement to Federal Jurisdiction,* 41 Emory L.J. 31 (1992).

8. The reason that this question is so awkwardly phrased is that, strictly speaking, there is *no* Supreme Court case on point. The cases which

addressed the issue of pendent party jurisdiction (*Kroger, Aldinger*) did so in the context of whether jurisdiction could be exercised over a nondiverse party, not a party who lacked the requisite amount in controversy. As for *Zahn,* it concerned a class action situation and, in addition, the Court did not hold that the district court could not exercise pendent party jurisdiction over plaintiffs with insufficient amounts in controversy, but rather that those plaintiffs could not aggregate their claims to total the requisite amount. Indeed, in his dissent, Justice Brennan indicated that "[o]nce jurisdiction has attached to the 'action,' ... ancillary jurisdiction supports a determination that [the claims of nonappearing class members] may be entertained." 414 U.S. at 305, 94 S.Ct. at 514 (Brennan, J., dissenting).

isdiction[9] except as provided in subsection (b) (and other exceptions not germane to this inquiry) and the assertion of a claim by a plaintiff who cannot meet the amount in controversy requirement is not among the exceptions listed in subsection (b).

On the other hand, permitting supplemental jurisdiction in a situation in which original diversity jurisdiction would not be allowed would contravene § 1332. Of course, pendent jurisdiction as typified by the *Gibbs* case contravened § 1332 as well, but as noted, the doctrine had never been extended to situations in which original jurisdiction was based on diversity. Nor does reference to the legislative history resolve the matter. The legislative history states that "[t]he section is not intended to affect the jurisdictional requirements of 28 U.S.C. § 1332 in diversity-only class actions, as those requirements were interpreted prior to *Finley*." H.Rep. No. 734, 101st Cong., 2d Sess. 29, *reprinted in* 1990 U.S.C.C.A.N. 6860, 6875 (footnote omitted, which footnote referenced the *Zahn* decision as well as *Supreme Tribe of Ben Hur v. Cauble,* 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921), which held that only the named representatives must be of diverse citizenship in a diversity-based class action suit). To date, no Court of Appeals has specifically addressed this issue,[10] and the district courts which have addressed it have decided it under various theories, as discussed *infra*.

### Congress Said What It Meant and Meant What It Said

The leading case finding that § 1367 overrules *Zahn* in the non-class action context

involved the very situation presented in the instant case. In *Garza v. National American Insurance Co.,* 807 F.Supp. 1256 (M.D.La.1992), a family was involved in an auto accident and Jack Garza's claims met the requisite amount in controversy, but those of the other family members did not. The court held that:

In finding that § 1367 provides for the exercise of supplemental jurisdiction over the claims of parties which do not independently meet the amount in controversy requirement, the court notes that this amounts to legislative overruling of pre–§ 1367 cases holding that the exercise of jurisdiction over a state law claim in which complete diversity and the requisite amount in controversy existed does not give the court the authority to exercise "pendent" jurisdiction over a claim by a second plaintiff who, although diverse, could not meet the jurisdictional amount. These pre–§ 1367 cases include *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). However, this court finds that the Congress said what it meant and that the Congress meant what it said—the language of § 1367 unavoidably overrules these pre–§ 1367 cases in those instances where the requirements of § 1367(a) are fulfilled and the exceptions of § 1367(b) are inapplicable. Therefore, the court finds that supplemental jurisdiction exists over the claims of the Garza family members because they are so related to the claim of Jack Garza as to form a single "case" under Article III of the United States Constitution.

*Watson v. Shell Oil Co.,* 979 F.2d 1014, 1021 (5th Cir.1992), *reh'g en banc granted,* 990 F.2d 805 (5th Cir.1993). The Third Circuit raised but did not decide the issue because *no* plaintiff could satisfy the requisite amount in controversy (thus, there was no original claim upon which supplemental jurisdiction could have been appended). *Packard v. Provident Nat'l Bank,* 994 F.2d 1039, 1045 n. 9 (3d Cir.), *cert. denied sub nom. Upp v. Mellon Bank, N.A.,* —— U.S. ——, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993). The actual number of cases discussing § 1367 outside the class action context to date is quite small. All of the cases the Court has identified are discussed *infra*.

**9.** *See Growth Horizons, Inc. v. Delaware County, Pa.,* 983 F.2d 1277, 1285 n. 14 (3d Cir.1993) ("federal courts *shall* exercise supplemental jurisdiction over pendent claims arising out of the same case or controversy").

**10.** Most of the cases have addressed the issue of whether § 1367 overrules *Zahn* in the context of a diversity-based class action suit. *See, e.g., Averdick v. Republic Fin. Servs., Inc.,* 803 F.Supp. 37, 45 (E.D.Ky.1992). Indeed, the Fifth Circuit has held that § 1367 does not overrule *Zahn* in the class action context, and the court has granted rehearing en banc to consider the issue further.

807 F.Supp. at 1258.[11]

In *Patterson Enterprises, Inc. v. Bridgestone/Firestone, Inc.*, 812 F.Supp. 1152 (D.Kan.1993), when a tractor trailer had an accident allegedly because a Firestone tire on the vehicle failed, Mr. Patterson sued for damages to his tractor and the owners of the contents of the trailer sued for damages to the contents, but only Mr. Patterson's claims exceeded $50,000. The court recognized that at least two other district courts had held that § 1367 does not overrule *Zahn*. The court determined, however, that:

> *Griffin* [*v. Dana Point Condominium Association*, 768 F.Supp. 1299 (N.D.Ill.1991) ] and *Averdick* [*v. Republic Financial Services, Inc.*, 803 F.Supp. 37 (E.D.Ky.1992) ] rely on the legislative history, which indicates that the drafters did not intend to overrule *Zahn* in class action suits. Whatever the merits of that argument in a class action dispute, this case is not a class action and the legislative history is not useful in interpreting the unambiguous provisions of this statute. Therefore, this court disagrees with *Griffin* and *Averdick* and holds that § 1367 does provide supplemental jurisdiction in this situation.

*Id.* at 1154–55 (citations omitted) (footnote omitted). The court concluded that "[i]f the Congress had intended to exclude situations such as this one from the scope of supplemental jurisdiction, it could have done so just as easily as it excluded ones arising under Rules 14, 19, 20 and 24." *Id.* at 1154. *See also Leroy Cattle Co. v. Fina Oil & Chem. Co.*, Civ. A. No. 93–1286–MLB, 1994 WL 151105, at *11–13 & n. 9 (D.Kan. Mar. 2, 1994) (distinguishing *Patterson* from the class action context and observing that Congress could not have simply excluded class actions from the scope of § 1367(a) by including Rule 23 in the list of exceptions in § 1367(b) because that would have had the effect of overruling the Supreme Court's decision in *Cauble* that only named parties have to meet the diverse citizenship requirement).

### Co–Plaintiff's Claims Are Not Within § 1367

Several courts have criticized the holding in *Garza* as improperly using the supplemental jurisdiction statute to expand federal jurisdiction where it otherwise would not exist. Faced with a similar fact situation (several plaintiffs in an auto accident, but amount in controversy only satisfied as to some of them), one court held that:

> In focusing on the "same case or controversy" provision, the *Garza* court ignored an important limiting clause in § 1367. Supplemental jurisdiction only applies to "other claims" related to "any civil action of which the district courts have original jurisdiction...." In the present case, there technically are no "other claims." The claims of the co-plaintiffs are part of the initial civil action. Because the claims are for less than $50,000, the court does not have original jurisdiction over the initial civil action. Bouvier should not be able to use § 1367 to expand the scope of the court's original jurisdiction. [Section] 1367 is intended to allow supplemental claims to be appended to actions already properly before a federal court, not to squeeze in an initial action that is otherwise beyond the court's jurisdiction.

*Duet v. Lawes*, Civ. A. No. 94–0739, 1994 WL 151095, at *2 (E.D.La. Apr. 7, 1994) (footnote omitted). *See also Leung v. Checker Motors Corp.*, No. 93 C 2704, 1993 WL 515470, at *2 (N.D.Ill. Dec. 7, 1993); *Hanshew v. U.S. Fidelity & Guaranty Co.*, 746 F.Supp. 55, 58 (D.Kan.1990) (claims of heirs met amount in controversy in auto accident suit, but claim of estate did not, so no supplemental jurisdiction over it, relying upon pre-§ 1367 case of *Sarnoff v. American Home Prods. Corp.*, 798 F.2d 1075 (7th Cir.1986)).

### No Independent Ticket of Entry

In *Griffin v. Dana Point Condominium Association*, 768 F.Supp. 1299 (N.D.Ill.1991), often cited as one of the first cases to hold that supplemental jurisdiction may not be asserted in a diversity non-class action con-

---

**11.** *Garza* is mentioned under the heading "Effect on Monetary Jurisdiction and the *Zahn* Rule" in David D. Siegel, Practice Commentary The 1990 Adoption of § 1367, Codifying "Supplemental" Jurisdiction.

text, Catherine Griffin brought a slip-and-fall claim for medical expenses and pain and suffering that satisfied the amount in controversy, but her husband Glenn brought a loss of consortium claim that did not. The court quoted a lengthy passage from *Zahn* to demonstrate that the requirement that each plaintiff satisfy the requisite amount in controversy for diversity jurisdiction is longstanding (and was applied to the class action context in *Zahn*). Turning to § 1367, the court concluded:

> Section 1367(b), although it speaks only in terms of "claims by persons proposed to be joined as plaintiffs under Rule 19," does not alter that proposition at all—after all, because Glenn does not have an independent ticket of entry to the federal court on his own, the only way that he can do so is by trying to piggyback onto Catherine's presence here. *Zahn* and its long line of predecessors forbid that, and such a dramatic change in established law is not within the purview of the new statute.

*Id.* at 1302 (footnote omitted). In a footnote, the court acknowledged that the legislative history invoking *Zahn* referred to the class action situation. "But the basis for that ruling was the one stated in the *Zahn*, [sic] language quoted at length here, and that underpinning is also left unimpaired by Section 1367." *Id.* at 1302 n. 4. *See also Fink v. Heath*, No. 91 C 2982, 1991 WL 127664, at *2–3 & n. 4 (N.D.Ill. July 8, 1991); *C.D.S. Diversified, Inc. v. Franchise Fin. Corp.*, 757 F.Supp. 202, 205 (E.D.N.Y.1991) (whether applying § 1367 or not, the result would still be no jurisdiction over count asserting conversion against one defendant when other counts did not involve that defendant).

### *Inconsistency With § 1332*

In *Pellegrino v. Pesch*, plaintiff brought a claim for unpaid wages against one defendant and a claim for collection of a judgment note against another defendant. The court agreed that "plaintiff's claim against PHS is part of the same case or controversy as his claim against Pesch individually" but held

that "[b]ecause the Court finds that the exercise of jurisdiction over PHS would be inconsistent with § 1332's jurisdictional requirements, the exception carved out in subsection (b) plainly precludes the exercise the exercise of supplemental jurisdiction over plaintiff's claim against PHS." No. 91 C 4967, 1992 WL 159169, at *6 (N.D.Ill. June 29, 1992) (footnote omitted). *See also Congram v. Giella*, No. 91 Civ. 1134 (LMM), 1992 WL 349845, at *2–3 (S.D.N.Y. Nov. 10, 1992); *Knic Knac Agencies v. Masterpiece Apparel, Ltd.*, No. 94 Civ. 1073 (LMM), 1994 WL 263601 (S.D.N.Y. June 7, 1994); *Cheramie v. Texaco, Inc.*, Civ. A. No. 91–3114, 1991 WL 236784, at *2 (E.D.La. Oct. 31, 1991) ("a federal court has supplemental (i.e., pendant party) jurisdiction over one plaintiff's non-federal claims against non-diverse defendants, not over another plaintiff. One plaintiff cannot tag onto the claim of another plaintiff pursuant to pendant party jurisdiction and effectively abrogate the rule that each plaintiff's claim must exceed the jurisdictional amount."); *Chouest v. American Airlines, Inc.*, 839 F.Supp. 412, 415 (E.D.La. 1993) (same).[12]

### *Supplemental Jurisdiction Applied Without Controversy*

Despite the apparent controversy of this issue, at least one judicial district has been applying § 1367 to exercise supplemental jurisdiction over claims for less than $50,000 when the original jurisdiction claim was diversity-based, apparently taking § 1367 at face value. In *ITT Commercial Finance Corp. v. Unlimited Automotive, Inc.*, the court exercised supplemental jurisdiction over two counts of a four-count diversity complaint because they arose out of the same breach of a finance agreement; no mention was made of *Zahn*. 814 F.Supp. 664, 669 (N.D.Ill.1992). *See also Haslam v. Lefta, Inc.*, No. 93 C 4311, 1994 WL 117463, at *2 (N.D.Ill. Mar. 25, 1994) (same, citing *ITT*); *Corporate Resources, Inc. v. Southeast Suburban Ambulatory Surgical Ctr., Inc.*, 774 F.Supp. 503, 306 (N.D.Ill.1991) (reading § 1367's overruling of *Finley* to allow pen-

---

12. On a related issue, a federal court held that supplemental jurisdiction could not be exercised pursuant to § 1367 over a *non-diverse* defendant.

*Blum v. Toyota Sales USA, Inc.*, No. 90–2428–R, 1991 WL 50258, at *3 (D.Kan. Mar. 5, 1991).

dent party jurisdiction over eight counts of a complaint against individual lessees whose liability was each less than $50,000 based on original jurisdiction over breach of contract claim).

### Passing in the Uncleared Left Lane

Perhaps the lane has been partially cleared, but snow has been cast on both sides of the road and the path ahead is obscured. On the one hand, pre–§ 1367 case law would not permit exercising "pendent party" jurisdiction over plaintiff Amy Lindsay's claim in Count II of the Amended Complaint because the Court's original jurisdiction is based upon diversity of citizenship and each plaintiff must meet § 1332's amount in controversy requirement on her own. *Zahn; Pellegrino.* Permitting supplemental jurisdiction in this situation would permit plaintiffs to "squeeze in an initial action that is otherwise beyond the court's jurisdiction." *Duet,* 1994 WL 151095, at *2.

The difficulty with the reasoning in *Duet* is that there is no principled way to distinguish "supplemental claims to be appended to actions already properly before a federal court" from "an initial action that is otherwise beyond the court's jurisdiction." Clearly, claims for amounts in controversy less than $50,000 do not satisfy *original* jurisdiction as defined in § 1332, but once the court has original jurisdiction over a claim, § 1367 states that the court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III ... [and that this] jurisdiction shall include claims that involve the joinder or intervention of additional parties."

Thus, the express wording of the statute appears to apply to this situation—indeed, arguably the Court "shall" exercise supplemental jurisdiction except as provided by subsection (b) of § 1367, and this situation does not fall within one of the exceptions. *Garza,* 807 F.Supp. at 1258; *Patterson,* 812 F.Supp. at 1154. Admittedly, *Garza* and *Patterson* do not represent a majority view on this issue. Moreover, with due respect to the court in *Garza,* given the controversy over this question and the paucity of legislative history, the Court cannot easily conclude that Congress "said what it meant and meant what it said." However, the reasoning of that phrase is not so much that the court had divined what Congress actually intended, but rather that, whatever Congress intended, this result follows from the language of § 1367(a) and is not prohibited by either § 1367(b) or the legislative history. The legislative history does not clearly apply to this situation (*Patterson, id.* at 1155), although arguably its "underpinning" does. *Griffin,* 768 F.Supp. at 1302 n. 4. The legislative history also states that:

> Supplemental jurisdiction has enabled federal courts and litigants to take advantage of the federal procedural rules on claim and party joinder to deal economically—in single rather than multiple litigation—with related matters, usually those arising from the same transaction, occurrence, or series of transactions or occurrences. Moreover, the district·courts' exercise of supplemental jurisdiction, by making federal court a practical arena for the resolution of an entire controversy, has effectuated Congress's intent in the jurisdictional statutes to provide plaintiffs with a federal forum for litigating claims within original federal jurisdiction.

1990 U.S.C.C.A.N. at 6874. The Court is faced with a difficult task. Although this area of the law is far from clear, the Court should apply § 1367 as written and exercise supplemental jurisdiction over Count II of the Amended Complaint.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed up until and including August 22, 1994, to file objections to this report and recommendation. Responses are due. by September 6, 1994.

August 4, 1994

Dated